FORET, Judge.
This is a divorce action filed by plaintiff, Pattie Prather Dejean, against her husband, Gantt Nicholson Dejean. From a judgment in favor of the wife, the husband appeals. At issue on appeal is the trial judge's finding as to fault, and the propriety of the trial judge’s decision to re-open the case for additional evidence.
FACTS
Pattie Prather married Gantt Nicholson Dejean on August 26, 1967. The couple began experiencing marital difficulties which resulted in their physical separation on December 3, 1980. On December 18, 1980, Pattie filed suit for separation based on the grounds of her husband’s abandonment. Gantt reconvened, alleging cruel treatment on the part of his wife.
The wife’s separation suit, however, was subsequently dismissed when she filed for divorce on February 16, 1982, on the basis of living separate and apart for over one year. LSA-R.S. 9:301. The divorce was granted on March 23, 1982, by mutual consent of the parties, and a judgment was signed which reserved the rights of the parties to litigate fault and alimony at a future date.
On March 26,1982, a hearing was held to determine alimony and fault. Unfortunately, time was limited and, therefore, the fault issue was not reached. Nevertheless, the trial judge awarded $1150 per month to the wife as post-divorce alimony and reserved the right of the husband to litigate fault at a future date.[1] This judgment was signed on June 7, 1982.
On June 22, 1982, a hearing was held to decide the issue of fault. After re-opening the case ex proprio motu for additional evidence, the trial court ruled that any fault of which Pattie Dejean may have been guilty was caused by her mental problems and therefore her actions were excused. Courville v. Courville, 363 So.2d 954 (La.App. 3 Cir.1978), writ refused, 365 So.2d 243 (La.1978). Thus, the wife was found not to be at fault, and therefore entitled to post-divorce alimony. A formal judgment was signed on September 14, 1982.
On September 20, 1982, Gantt filed a motion for new trial to reconsider the finding of fault, and combined therewith a rule to reduce alimony. The court rendered judgment on February 11, 1983, denying the husband’s motion for new trial, but granting him a reduction in alimony from $1150 per month to $600 per month. From that judgment, the husband has appealed, both as to the finding of fault and the amount awarded[2].
Several issues are presented on appeal:
*929 (1) Whether Pattie Prather Dejean was guilty of fault; if yes,
(2) Whether Pattie’s mental problems excused her fault; if yes,
(3) Whether the trial court abused its discretion in its award of alimony.
FAULT
For purposes of post-divorce alimony, fault is synonymous with the fault grounds for separation or divorce. Boudreaux v. Boudreaux, 407 So.2d 1363 (La.App. 3 Cir.1981). In the case at bar, the husband’s reconventional demand was based on cruel treatment. Thus, to be at fault, Pattie’s cruel treatment must have been so serious as to render the couple’s living together insupportable. LSA-C.C. Article 138.
Although the trial judge found that Pattie’s mental problems were so serious as to excuse her fault, or to render it involuntary, he never reached the final issue of whether she was actually at fault. It is obvious, however, that the trial judge did feel that Pattie was at fault, else why should he have raised the issue of her mental condition, an issue which was not raised, and indeed purposely avoided by both parties. Having carefully reviewed the record, we have no hesitancy or difficulty in finding that Pattie Dejean behaved in such a manner toward her husband as to render any further living together very much insupportable.
The record shows that she demonstrated an attitude of indifference and lack of respect for her husband. She constantly compared her husband (a dentist) to her father (a physician) and belittled Gantt by telling him that her father’s occupation or profession was more important than his (Gantt’s) because her father saved lives. She also exhibited an excessively jealous nature, even to the point of becoming enraged when her husband, at a party, helped another lady remove her coat. She constantly made disparaging remarks about Gantt’s father and family, referring to his father as an alcoholic and a wife-beater.
There are other incidences in the record of acts or omissions committed by Pattie resulting in mental cruelty to her husband. Finally, on the date of physical separation, December 3, 1980, she had addressed a note to Gantt (unfortunately the note is not in evidence, but both parties admit it was written) wherein she instructed her husband on how to proceed in the art of making love to her, in what manner to touch her, hold her, etc. Indeed, she told him that if he would not agree to follow these instructions, that she would leave the matrimonial domicile. Gantt, however, countered by saying that it would be best if she would stay in the matrimonial domicile with the children, and that he would go to spend the night at his mother’s home. The parties have never lived together since.
Having concluded that the evidence in the record shows Pattie Dejean to be guilty of fault, we now turn to the issue of whether her mental problems excused her fault.
MENTAL PROBLEMS
Gantt argues that the trial judge’s actions in re-opening the case for additional evidence and then placing Pattie’s medical and psychiatric records into evidence were improper. We agree.
The record shows that the trial judge, after both parties had rested their case, re-opened the case in order to hear psychiatric testimony concerning Pattie’s past history of mental problems. He specifically wanted to hear Dr. David Regan, a psychiatrist who had treated Pattie in the past after she had returned from the Brentwood Mental Hospital in Shreveport, Louisiana. Since the good doctor was in California at the time of trial, the trial judge ordered the medical and psychiatric records into evidence over the objection of defendant’s *930 counsel. So as not to prejudice the husband, the trial judge afforded him the opportunity to produce other psychiatric testimony or evidence.
A trial judge has the right to keep open the record if he feels that the ends of justice so require. And, his decision to do so will not be overturned unless there is a clear abuse of discretion. Yeutter v. Lewis, 334 So.2d 728 (La.App. 3 Cir.1976).
We feel that the trial court abused its discretion in this case. First, the medical records he considered, and upon which he based his decision, were pure hearsay and as such, clearly inadmissible. Secondly, the trial judge’s offer to have Pattie examined by another psychiatrist would have had very little, if any, probative value, because such an examination, necessarily, would have taken place some eighteen to twenty-four months after the alleged acts of cruel treatment. Although the trial judge had the authority to re-open the case, his actions in ordering into evidence the medical and psychiatric records were an abuse of discretion and therefore improper.
Even if we assume, however, that the records were properly admitted, we do not feel that they show that Pattie’s mental condition was so serious as to excuse her fault.
The record shows that the wife was admitted to Brentwood Hospital in Shreveport, Louisiana, on March 1, 1980, where she remained until April 18, 1980. The alleged acts of cruel treatment occurred from June through December of 1980, the parties having separated on December 3, 1980.
After her discharge from Brent-wood Hospital, the wife was treated by Dr. David B. Regan, a psychiatrist in Lafayette, Louisiana. In the May 1, 1980 report of Dr. Regan, the doctor states that the wife’s thought processes are coherent, relevant, and rational, and that her picture was not that of schizophrenia except for a rather flat look on her face. Dr. Regan’s report of May 20,1980, states that the wife had a pretty good recovery from her acute psychosis. On July 1, 1980, Dr. Regan found the wife to be “feeling good and bubbling over with good effect. Her thinking is certainly clear, coherent and relevant. She is enjoying life generally and has begun to increase her activity.” The report of July 22, 1980, states that the wife was doing well and showing good bright effect; she had enjoyed her vacation in Arkansas and was showing good mental functioning, not hypomanic and definitely not depressed. He found her on this occasion to be coherent, relevant, and rational with a bright intellect, probably in the superior range and found her judgment to be good. Later on in that same report, the doctor stated that the wife was feeling well and her effect is very good and though processes perfectly clear. Again, on October 30, 1980, the patient was doing well and on November 20, 1980, the wife was doing quite well mentally. From all the facts, we feel that although some mental problems existed, they were not so severe so as to excuse Pattie’s fault.
For the above and foregoing reasons, the judgments of the trial court granting Pat-tie Prather Dejean post-divorce alimony are reversed, vacated, and set aside, and hei demands dismissed. All costs at the trial level and on appeal are assessed against appellee, Pattie Prather Dejean.
REVERSED.

. We note that because a finding of fault is a prerequisite to post-divorce alimony, the actions of the trial judge were highly irregular. The action of the trial judge, in this respect, however, is not challenged on appeal, and is immaterial under our disposition of the case.

. The alimony judgment was signed on June 7, 1982. The appeal was not taken until February 18, 1983. Thus, it appears that Gantt's appeal on this issue wasn’t timely.
Because of the unorthodox procedural methods used by the trial court, the wife's alimony *929 judgment could have been defeated by a subsequent rendering of fault. Thus, we do not feel that it was a proper final judgment from which to appeal. In other words, the rendering of the alimony judgment did not become final until the rendering of the fault judgment on September 14, 1982. The motion for new trial and subsequent appeal after the fault judgment was therefore timely. We find that the issue of alimony is properly before us.